REDACTED

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

FILED

DEC 2 7 2021

US DISTRICT COURT
DISTRICT OF DELAWARE

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Phone #1-blue Alcatel flip cellular phone, IMEI 015886000111398; Phone #2-grey Alcatel flip cellular ) Case No. 21- 367 M
phone; Phone #3-Motorola cellular phone; Phone #4-Samsung Galaxy S10+ cellular phone with )
cracked screen; Phone #5-HTC cellular phone; Phone #6-LG cellular phone with cracked screen; )
Phone #7- Rose Gold LG cellular phone; Phone #8-Samsung S8 cellular phone; Phone )
#9-Samsung cellular phone, IMEI 359011836089346; San Disk 16 GB Micro-SD card; 2 GB Micro-SD )
card; and a SanDisk 8 GB Micro-SD card. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A(a)(2); | Distribution of Child Pornography; |
| 18 U.S.C. 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:
See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Kimberly Caraway
*Applicant's signature*

Kimberly Caraway, Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 12/27/2021

City and state: Wilmington, DE

_____
*Christopher J. Burke*
*Judge's signature*

Christopher J. Burke, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH | ) ) ) Case No. 21- 367M |
| Phone #1-blue Alcatel flip cellular phone, IMEI 015886000111398; | ) ) |
| Phone #2-grey Alcatel flip cellular phone; | ) |
| Phone #3-Motorola cellular phone; | ) |
| Phone #4-Samsung Galaxy S10+ cellular phone with cracked screen; | ) ) |
| Phone #5-HTC cellular phone; | ) |
| Phone #6-LG cellular phone with cracked screen; | ) |
| Phone #7- Rose Gold LG cellular phone; | ) |
| Phone #8-Samsung Galaxy S8 cellular phone; | ) |
| Phone #9-Samsung cellular phone, IMEI 359011836089346; | ) ) |
| San Disk 16 GB Micro-SD card; | ) |
| 2 GB Micro-SD card; and a | ) |
| SanDisk 8 GB Micro-SD card. | ) |

```
 _____
|   FILED    |
|            |
| DEC 27 2021|
|_____|
 US DISTRICT COURT
DISTRICT OF DELAWARE
```

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
## FOR A WARRANT TO SEARCH AND SEIZE

I, Kimberly Caraway, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), Wilmington, Delaware Office, being duly sworn, depose and state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search nine (9) cellular phones (listed in Attachment A as Phones # 1-9) and three (3) Micro-SD cards (together the "SUBJECT DEVICES"), that are currently stored at HSI Wilmington. The SUBJECT DEVICES and things to be seized are further described in Attachments A and B, respectively.

2.      I am a Special Agent with HSI and have been so employed since 2004.  I am newly assigned to the HSI Wilmington, Delaware, Office.  I was previously assigned to HSI Philadelphia, Pennsylvania, where I gained extensive experience in numerous investigative disciplines to include illegal immigration, worksite enforcement, money laundering, and contraband smuggling. Of note, I spent approximately seven (7) years investigating criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2422(b), 2252(a) and 2252A.  I have observed and reviewed numerous examples of child pornography (as defined in Title 18, United States Code, Section 2256) in all forms of media, including computer media.  I have also participated in the execution of numerous search warrants, a number of which involved child exploitation and/or child pornography offenses.

3.      As a federal agent, I am authorized to investigate violations of laws of the United States, including Title 18, United States Code, Sections 2252A(a)(2) and 2252A(a)(5)(B), and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.      As discussed in more detail below, there is probable cause to believe that between May 2021 and December 2021, James Ellis PICKETT ("PICKETT") sent child pornography to another individual via Instagram and amasses a personal collection of child pornography. Such actions violate Title 18, United States Code, Sections 2252A(a)(2) (Distribution of Child Pornography) and 2252A(a)(5)(B) (Possession of Child Pornography) (the "SPECIFIED FEDERAL OFFENSES").  In an interview with PICKETT, PICKETT admitted to the distribution and further admitted to the presence of child pornography on various devices, including some of the SUBJECT DEVICES. There is thus probable cause to believe that the SUBJECT DEVICES

contain contraband and evidence, fruits, and instrumentalities of violations of the SPECIFIED

FEDERAL OFFENSES.

5.     The statements contained in this affidavit are based in part on information and

reports provided by U.S. federal law enforcement agents; written reports about this and other

investigations that I have received, directly or indirectly, from other law enforcement agents;

information gathered from the service of administrative subpoenas; the results of physical and

electronic surveillance conducted by law enforcement agents; independent investigation and

analysis by law enforcement agents/analysts and computer forensic professionals; and my

experience, training, and background as a Special Agent. Since this affidavit is being submitted

for the limited purpose of securing a search warrant, I have not included each and every fact known

to me concerning this investigation.  I have set forth only the facts that I believe are necessary to

establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of

the violations of the SPECIFIED FEDERAL OFFENSES are located within the SUBJECT

DEVICES.

## SPECIFIED FEDERAL OFFENSES

6.     As noted above, this investigation concerns alleged violations of the following:

- Title 18, United States Code, Sections 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any mean, including by computer.

- Title 18, United States Code, Sections 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by

computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

**SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY, AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND/OR DISTRIBUTION OF CHILD PORNOGRAPHY**

7.     Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view, download, receive, and/or distribute child pornography are individuals who have a sexual interest in children and in images of children. In addition, there are certain characteristics common to such individuals, including the following:

a.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.     Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.     Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area. These collections are often maintained for several years and are kept close by, usually at

the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

     e.     Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

     f.     Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

     g.     Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

8.     Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

     a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

b.      The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

c.      Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

d.      Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another. Many people generally carry their smartphone on their person.

e.      Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

f.      Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

g.      The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files. The data is maintained on the servers of the providers and is occasionally retained by the providers after the user deletes the data from their account.

h.      A "hash value" is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

i.      In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

j.      Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt, and possession of child pornography will be found in the SUBJECT PREMISES notwithstanding the passage of time.

k.      In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

l.      When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

m.      In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

n.      The storage capacity of personal computers has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 500 GB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

o.      Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since the storage capacity of hard

drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## PROBABLE CAUSE

9.       On or about September 17, 2021, the Delaware Child Predator Task Force ("DCPTF") received a cybertip from the National Center for Missing and Exploited Children ("NCMEC"). The cybertip was initiated by Instagram. Per the report, Instagram user "Lil Prince J" with username ███████ ("Instagram Account") uploaded a video of suspected child pornography on or about August 13, 2021 via IP address ████████████████████. Based on the IP address, the NCMEC was able to ascertain that the violation occurred in Delaware, and thus provided the tip to the DCPTF.

10.       In October 2021, the DCPTF issued a subpoena to Comcast for the aforementioned IP address. Comcast responded and provided that the IP address is assigned to ████████ at ███ ██████████Bear, Delaware 19701. ██████████ is the mother of PICKETT. Also in October 2021, the DCPTF issued a subpoena to Facebook for subscriber information pertaining to the Instagram Account. Facebook responded and provided that this account was created with the name ████████████ and registered email addresses of ██████████████████████ and ████████████ PICKETT's full name is James Ellis Pickett.

11.       On December 14, 2021, HSI Special Agent Sean Downey obtained a search warrant from the Honorable Sherry R. Fallon, United States Magistrate Judge, for the file associated with the cybertip submitted by Instagram.[1] SA Downey reviewed the flagged file and confirmed it depicts child pornography.  Specifically, the video file is approximately 25 seconds in length and

---

[1] Case No. 21-351M. Instagram flagged the file as suspected child pornography pursuant to its match to a Hash ID that constitutes known child pornography (MD5 # 00ed3304f265772d99ab57d753c28d95). However, no one from Instagram opened the file and thus a search warrant was obtained.

depicts an Asian male, approximately 10-12 years of age, fully nude with his penis visible. The child masturbates until ejaculation.

12.     On December 16, 2021, HSI agents interviewed PICKETT at Delaware Probation and Parole located at 314 Cherry Lane, New Castle, DE 19720 while PICKETT was present for his weekly appointment.[2] During said interview, PICKETT admitted ownership of the Instagram Account and that he had distributed child pornography via said account. Based on these admissions, Probation and Parole conducted an administrative search of the vehicle PICKETT was driving (which was parked in the lot of the probation office) and recovered the SUBJECT DEVICES. PICKETT is prohibited by the terms of his probation from possessing any device that can access the Internet.

13.     After the discovery of the devices, your Affiant and another HSI agent asked PICKETT if he was willing to speak with them again. PICKETT voluntarily agreed to be further interviewed. PICKETT claimed ownership of the SUBJECT DEVICES. According to PICKETT, Phones #1 and #2 were issued to PICKETT by Probation and Parole; phones #4, #5, #6, #7, and #8 were phones that PICKETT possessed prior to his incarceration; and phones #3 and #9 were phones PICKETT had used recently.

14.     PICKETT further admitted to distributing child pornography on a few other social media platforms in addition to Instagram, with the most recent transmission occurring approximately one or two weeks prior. PICKETT further admitted to the presence of child pornography on Phone #9 and directed your Affiant to where on the device he stored the child pornography.  Your Affiant observed and confirmed the presence of child pornography.

---

[2] PICKETT was convicted in Delaware in 2019 for dealing in child pornography. He was released from prison around May 20, 2021. PICKETT was (and still is) on state probation as a condition of his release.

15.     PICKETT further showed your Affiant a number of applications on which he is a member of groups in which child pornography is shared. PICKETT explained that he obtains his child pornography from these groups and then saves them to his gallery, referring to it as his "collection." PICKETT also stated that there may be child pornography on one of the Micro-SD cards.

16.     PICKETT was ultimately lodged by Probation and Parole at Howard R. Young Correctional Institution in Wilmington, Delaware on a Detentioner Hold. Probation and Parole Officers turned the SUBJECT DEVICES over to HSI for further investigation.

<u>SUMMARY</u>

17.     In summary, based on the facts detailed above, there is probable cause to believe that PICKETT is a distributor of child pornography who used a digital device to distribute child pornography onto Instagram. Thus, based on my training and experience, PICKETT has a sexual interest in children, and individuals who have a sexual interest in children not only tend to collect and distribute child pornography, but tend to use multiple devices to view, collect and send child pornography. In this case, PICKETT stated to law enforcement that he sent child pornography to someone on Instagram and since that time has continued to save child pornography amassing a "collection" that he obtains from groups on various social media platforms. PICKETT was found to be in possession of nine (9) cellular phones and three (3) Micro-SD cards that there is probable cause to believe have facilitated his activities. As such, there is probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES will be found in the SUBJECT DEVICES.

18.     Further, computer files or remnants of such files can be recovered months after they have been viewed via the Internet, downloaded onto a storage medium, or even deleted. This

warrant seeks authorization to search the SUBJECT DEVICES identified as belonging to PICKETT, as more fully described in Attachment B.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

19.    As described above and in Attachment B, this application seeks permission to search for contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES that might be found among the SUBJECT DEVICES, in whatever form they are found.  One form in which the evidence might be found is as records in the form of data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure and search of computers and storage media and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

20.    *Probable cause:* I submit that if a computer or storage medium is found among the SUBJECT DEVICES, there is probable cause to believe that records will be stored on that computer or storage medium, for at least the following reasons:

    a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

      d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer or storage medium associated with the SUBJECT DEVICES because:

      a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

      b.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such

file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

        d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.     Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

        f.     I know that when an individual uses a computer to access with intent to view, possess, distribute, or receive child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

      22.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete

electronic picture of the computer's data, including all hidden sectors and deleted files. Either

seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on

the storage media, and to prevent the loss of the data either from accidental or intentional

destruction. This is true because of the following:

       a.     The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

       b.     Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

       c.     Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

       d.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B) and in compliance with circuit and district search procedures/protocols, the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

     23.    Based on the foregoing information, I have probable cause to believe that

contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL

OFFENSES as set forth herein and in Attachment B are currently contained on the SUBJECT

DEVICES, more fully described in Attachment A. I therefore respectfully request that a search

warrant be issued authorizing a search of the SUBJECT DEVICES for the items described above

and in Attachment B, and authorizing the seizure and examination of any such items found therein.

/s/ Kimberly Caraway
Special Agent Kimberly Caraway
Homeland Security Investigations

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this 27th day of December, 2021.

*Christopher J. Burke*
Honorable Christopher J. Burke
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is as follows:

- Phone #1 is a blue Alcatel Flip cellular phone with IMEI# 015886000111398. Below is a photograph of Phone #1:



- Phone #2 is a grey Alcatel flip cellular phone. Below is a photograph of Phone #2:



- Phone #3 is a Motorola cellular phone. Below is a photograph of Phone #3:



- Phone #4 is a Samsung Galaxy S10+ cellular phone with a cracked screen. Below is a photograph of Phone #4:



- Phone #5 is a HTC cellular phone. Below is a photograph of Phone #5:



- Phone #6 is a LG cellular phone with a cracked screen. Below is a photograph of Phone #6:



- Phone #7 is a rose gold LG cellular phone. Below is a photograph of Phone #7:



- Phone #8 is a Samsung Galaxy S8 cellular phone. Below is a photograph of Phone #8:



- Phone #9 is a Samsung cellular phone. Below is a photograph of Phone #9:



- San Disk 16 GB Micro SD card:



- 2 GB Micro SD card:



- SanDisk 8 GB Micro SD card:



**ATTACHMENT B**

**PROPERTY TO BE SEIZED**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely, violations of Title 18, United States Code, Sections 2252A(a)(2) (Distribution of Child Pornography) and 2252A(a)(5)(B) (Possession of Child Pornography) (the "SPECIFIED FEDERAL OFFENSES") from May 2021 to present:

1.    For PICKETT's mobile phones and smartphones and storage media compatible with mobile phones and smartphones (including SD cards and SIM cards) (hereinafter, collectively the "DEVICES"):

a.    evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user accounts and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.    evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.    evidence of the lack of such malicious software;

d.    evidence indicating how and when the DEVICES were accessed or used to determine the chronological context of DEVICE access, use, and events relating to the crime(s) under investigation and to the DEVICE user;

e.    evidence indicating the DEVICE user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.    evidence of the attachment to the DEVICES of storage media or other storage devices or similar containers for electronic evidence;

g.    evidence of programs (and associated data) that are designed to eliminate data from the DEVICES;

h.    evidence of the times the DEVICES were used;

i.    passwords, encryption keys, and other access devices that may be necessary to access the DEVICES or information that is stored within the DEVICES;

j.    documentation and manuals that may be necessary to access the DEVICES or to conduct a forensic examination of the DEVICES;

k.    records of or information about Internet Protocol addresses used by the DEVICES;

l.    records of or information about the DEVICES' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.    contextual information necessary to understand the evidence described in this attachment

n.    any and all adapters, chargers, or other hardware items necessary to charge the battery, or to maintain the functioning of, the DEVICES; and

o.    child pornography and child erotica.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as data found on hard disks or other media) and any photographic form (such as photographs or videos).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, laptop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

This warrant authorizes a review of computer and storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.